IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GRACIANO VELEZ, on behalf of      )
himself and all others            )
similarly situated,               )
                                  )
            Plaintiffs,           )
                                  )
     v.                           )      1:16CV377
                                  )
HEALTHCARE REVENUE RECOVERY       )
GROUP, LLC, d/b/a ARS Account     )
Resolution Services,              )
                                  )
            Defendant.            )


### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is a Motion to Dismiss filed by
Defendant Healthcare Revenue Recovery Group, LLC, ("HRRG") d/b/a
ARS Account Resolution Services ("ARS") ("Defendant"). (Doc. 6.)
Plaintiff Graciano Velez ("Plaintiff") has responded, (Doc. 13),
and Defendant has replied. (Doc. 15.) This matter is now ripe
for resolution, and for the reasons stated herein, Defendant's
motion to dismiss will be granted. Also before the court is
Plaintiff's Motion to Strike or in the Alternative for Leave to
File Surreply to Defendant's Motion to Dismiss (Doc. 16) to
which Defendant has responded (Doc. 17). For the reasons stated
herein, Plaintiff's motion will be denied.

I.    **BACKGROUND**

    A.    **Facts**

Plaintiff "is a natural person obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due a creditor other than Defendant." (Complaint ("Compl.") (Doc. 1) ¶ 30.) Plaintiff incurred this debt primarily for medical purposes. (Id. ¶ 31.)

Plaintiff identifies Defendant as "Healthcare Revenue Recovery Group, LLC, d/b/a ARS Account Resolution Services." (Id. ¶ 1.) Plaintiff further identifies Defendant as "an entity which at all relevant times was engaged, by use of the mails and telephone, in the business of collecting a 'debt' from Plaintiff, as defined by 15 U.S.C. § 1692a(5)" and as a "'debt collector' as defined by 15 U.S.C. § 1692a(6)." (Id. ¶¶ 26-27.)

Plaintiff alleges that "[o]n April 23, 2015, Defendant sent Plaintiff a letter in connection with the collection of the Debt." (Id. ¶ 33.) "In the April 23, 2015 letter, Defendant refers to itself as ARS or Account Resolution Services." (Id. ¶ 35.) Plaintiff further alleges that "ARS or Account Resolution Services" is neither registered as a "fictitious name for

Defendant" nor "licensed as a collection agency" in the State of North Carolina. (Id. ¶¶ 36-37.)

Plaintiff alleges that "[t]he April 23, 2015 letter is based on a form or template [the 'Template'] where Defendant refers to itself by ARS or Account Resolution Services," which "Defendant has used . . . to send collection notices to at least 40 individuals in the State of North Carolina within one year prior to the filing of this complaint." (Id. ¶¶ 42-43.) It is as a result of this letter that Plaintiff files the present class action lawsuit "on behalf of himself and all others similarly situated." (Id. ¶ 44.) "Specifically, Plaintiff seeks to represent the following class of individuals: All persons located in the State of North Carolina to whom Defendant sent, within one year before the date of this complaint and in connection with the collection of a debt, a collection letter based upon the Template." (Id.) Plaintiff alleges that he satisfies the requirements to initiate a class action and to serve as the class representative. (Id. ¶¶ 45-61.)

### B. Claims

Plaintiff's first claim alleges a violation of 15 U.S.C. § 1692e, in which Plaintiff argues Defendant violated the statute "by using the name ARS or Account Resolution Services, when those names are not registered in the state of North

Carolina and are not the true names of Defendant's business."
(Id. ¶ 66.)

Plaintiff's second claim alleges a violation of 15 U.S.C.
§ 1692f, in which Plaintiff argues Defendant violated the
statute "by engaging in unfair or unconscionable means to
collect or attempt to collect any debt from Plaintiff . . .
without complying with North Carolina's requirement to use the
name of a registered collection agency within North Carolina and
identifying their permit number." (Id. ¶ 71.)

Plaintiff's remaining claims arise under state law and
allege violations of N.C. Gen. Stat. § 58-70-110 and N.C. Gen.
Stat. § 75-54.  The state law claims include two claims pled in
the alternative, depending upon whether the Defendant is or is
not a "collection agency."  (Pl.'s Resp. to HRRG's Mot. to
Dismiss) ("Pl.'s Resp.") (Doc. 13) at 14 n.2.)

Plaintiff requests that he be certified as the class
representative and that the Complaint be designated as "the
operable complaint for class purposes." (See Compl. ¶¶ 66, 71,
74, 77.) For each claim, Plaintiff requests appropriate
statutory damages as well as attorneys' fees and costs. (Id.)

## II.  **STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>,
556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v.
Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially
plausible provided the plaintiff provides enough factual content
to enable the court to reasonably infer that the defendant is
liable for the misconduct alleged. <u>Id.</u> The pleading setting
forth the claim must be "liberally construed" in the light most
favorable to the nonmoving party, and allegations made therein
are taken as true. <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421
(1969).

However, "the requirement of liberal construction does not
mean that the court can ignore a clear failure in the pleadings
to allege any facts [that] set forth a claim." <u>Estate of
Williams-Moore v. Alliance One Receivables Mgmt., Inc.</u>, 335 F.
Supp. 2d 636, 646 (M.D.N.C. 2004).

Rule 12(b)(6) protects against meritless litigation by
requiring sufficient factual allegations "to raise a right to
relief above the speculative level" so as to "nudge[] the[]
claims across the line from conceivable to plausible." <u>Twombly</u>,
500 U.S. at 555, 570; <u>see</u> <u>Iqbal</u>, 556 U.S. at 662.

Under <u>Iqbal</u>, the court performs a two-step analysis. First,
the court separates factual allegations from allegations not
entitled to the assumption of truth (i.e., conclusory

allegations, bare assertions amounting to nothing more than a "formulaic recitation of the elements"). <u>Iqbal</u>, 556 U.S. at 681. Second, the court determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." <u>Id.</u> "At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor." <u>Estate of Williams-Moore</u>, 335 F. Supp. 2d at 646.

## III. <u>DISCUSSION</u>

### A.  <u>Plaintiff Satisfies the Standing Requirement</u>

In its motion to dismiss, Defendant argues that "[d]ismissal of this lawsuit is warranted because the Court is deprived of subject matter jurisdiction based on the Plaintiff's lack of standing under Article III of the United States Constitution and similar prescriptions of North Carolina state law." (Def.'s Mem. of Law in Supp. of Mot. to Dismiss) ("Def.'s Mem.") (Doc. 7) at 5.) Defendant argues that "[t]here is not a single allegation in the Complaint to support that the Plaintiff experienced a concrete and particularized injury as a result of the Defendant's alleged conduct. That is unsurprising because the only conduct being complained of is a name on a piece of paper." (<u>Id.</u> at 7.) Defendant argues that "[t]here is no

plausible way that a name, on its own, could inflict a concrete and particularized injury of the type that would confer standing." (Id.)

Plaintiff responds that "[t]he legally protected interests in this case are the right under § 1692e and the NCCPA [North Carolina Collection Agency Act] not to be the target of misleading communications, and the right under § 1692f not to be the target of unfair or unconscionable collection practices." (Pl.'s Resp. (Doc. 13) at 15.) Plaintiff argues that Defendant violated this right because "[t]he letter failed to use HRRG's true name, thereby actually invading his legally protected interest in receiving that information. Additionally, the letter's use of a name other than HRRG's true name similarly invaded Plaintiff's legally protected interest in being free from misrepresentations." (Id. at 16.)

Defendant replies that "the Plaintiff cannot demonstrate he has suffered a particularized or concrete injury." (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss ("Def.'s Reply") (Doc. 15) at 3.) Defendant argues that "[t]he concreteness requirement for standing provides that a plaintiff may not 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" (Id.

at 5) (<u>citing</u> <u>Spokeo, Inc. v. Robins</u>, 578 U.S. ____, ____, 136 S. Ct. 1540, 1549 (2016)).

> Article III standing requires:
>
> (1) an injury in fact (i.e., a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (i.e., a "fairly . . . trace[able]" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is "likely" and not merely "speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

<u>David v. Alphin</u>, 704 F.3d 327, 333 (4th Cir. 2013) (quoting <u>Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.</u>, 554 U.S. 269, 273-74 (2008)). Defendant only contests the first prong, that is, whether Plaintiff has suffered an "injury in fact." (<u>Id.</u>)

"The Fourth Circuit has yet to address the issue of whether a plaintiff must suffer an actual economic loss to bring suit under the FDCPA [Fair Debt Collection Practices Act], but several circuits which have considered the issue have found that no actual economic loss is required in order to have standing under the FDCPA." <u>Brown v. Transurban USA, Inc.</u>, 144 F. Supp. 3d 809, 827 (E.D. Va. 2015) (<u>citing</u> <u>Keele v. Wexler</u>, 149 F.3d 589, 593-94 (7th Cir. 1998) ("The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages."); <u>Tourgeman v. Collins Fin. Servs., Inc.</u>, 755 F.3d 1109, 1116 (9th Cir. 2014) ("The alleged violation of [the

plaintiff]'s statutory rights stems solely from the defendants' having mailed to him their collection letters, and that injury would be redressed by an award of statutory damages, which the FDCPA makes available to prevailing consumers."); Robey v. Shapiro, Marianos & Cejda, L.L.C._, 434 F.3d 1208, 1212 (10th Cir. 2006) ("Accordingly, [the plaintiff] has been injured under the terms of the FDCPA and can seek legal redress of his claims under that act. He has thus satisfied the 'injury in fact' and other requirements of constitutional standing."); Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 307 (2d Cir. 2003) ("Thus, courts have held that actual damages are not required for standing under the FDCPA."); see Stratton v. Portfolio Recovery Assocs., LLC, 770 F.3d 443, 448-49 (6th Cir. 2014) ("A plaintiff does not . . . have to have suffered actual damages." (citations omitted)).

Plaintiff and Defendant extensively dispute the significance and application of Spokeo throughout their briefs. (See Def.'s Mem. (Doc. 7) at 6-7; Pl.'s Resp. (Doc 13) at 15-19; Def.'s Reply (Doc. 15) at 2-5.) This court is most persuaded by the reasoning set forth by another district court within the Fourth Circuit in the case Biber v. Pioneer Credit Recovery, Inc., Case No. 1:16-cv-804, 2017 WL 118037 (E.D. Va. Jan. 11, 2017):

Not surprisingly, in the wake of Spokeo, the
overwhelming majority of courts have held that FDCPA
claims similar to [the plaintiff]'s are sufficient to
satisfy Article III's requirement that a plaintiff
establish an injury in fact. The underlying logic in
these opinions is (i) that Congress, in the FDCPA,
created a right to accurate debt-related information
and non-abusive collection practices, and (ii) that a
debt collector's false, misleading, deceptive, or
abusive conduct concretely harms a debtor by
detrimentally affecting that debtor's decisions
regarding his debt. In other words, § 1692e provides
certain debtors a right to be free from false,
deceptive, or misleading conduct or representations by
debt collectors, precisely because such conduct or
representations may cause harm or a material risk of
harm. Thus, in many instances, violations of § 1692e
differ significantly from the innocuous, bare
"procedural violations" described by the Supreme Court
in Spokeo.

Id. at *3 (collecting cases). This court concludes similarly to

Biber, that "[t]he 'injury in fact' suffered by Plaintiffs under

the FDCPA is not any actual economic loss, but rather being

subjected to the allegedly 'unfair and abusive practices' of

[the] Defendants." Transurban USA, 144 F. Supp. 3d at 827; see

Allah-Mensah v. Law Office of Patrick M. Connelly, P.C., Civil

Action No. PX-16-1053, 2016 WL 6803775, at *8 (D. Md. Nov. 17,

2016) ("Defendant's factual challenge to standing asserts that

Plaintiff's request for statutory damages is proof of a lack of

concrete injury. But the FDCPA's right to information through a

strict liability statutory scheme requires no showing of actual

damages."). As such, this court finds that Plaintiff satisfies the requirement of Article III standing.

**B.** **Plaintiff's Claim under 15 U.S.C. § 1692e(14) of the Fair Debt Collection Practices Act**

Plaintiff has alleged two claims under the FDCPA. The first claim alleges a violation of 15 U.S.C. § 1692e(14), which provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt . . . [including] the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." (Compl. (Doc. 1) ¶¶ 63, 65.) Plaintiff alleges that "Defendant violated 15 U.S.C. § 1692e(14) by using the name ARS or Account Resolution Services, when those names are not registered in the state of North Carolina and are not the true names of Defendant's business." (Id. ¶ 66.)

In order to maintain a claim under the FDCPA, Plaintiff must show: "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Boosahda v. Providence Dane LLC, 462 F. App'x 331, 333 n.3 (4th Cir. 2012); Davis v. Bowens, No. 1:11CV691, 2012 WL 2999766, at

*2 (M.D.N.C. July 23, 2012), <u>report and recommendation adopted</u>, No. 1:11CV691, 2012 WL 4462184 (M.D.N.C. Sept. 25, 2012). For purposes of the motion to dismiss the 1692e claim, the parties only dispute whether the third element is plausibly alleged – whether Defendant "has engaged in an act or omission prohibited by the FDCPA." <u>Boosahda</u>, 462 F. App'x at 333 n.3.

Plaintiff's factual allegations in support of both the 1692e and 1692f claims, that is, the "act[s] . . . prohibited by the FDCPA," center around three factual allegations: (1) that ARS, or Account Recovery Services, was not a true name of the debt collector, HRRG; (2) that neither HRRG nor ARS were registered in the state of North Carolina as required by state law, and (3) that HRRG did not use a registered name and permit number in its collection letter sent to Plaintiff.

### 1. **Whether ARS is a "true name" of HRRG**

In support of its Motion to Dismiss the first claim alleging ARS is not a "true name" of HRRG, Defendant argues that "Account Resolution Services is registered as a fictitious name for HRRG with the Florida Secretary of State, and as a consequence there is nothing false, deceptive, or misleading about the use of it in interstate commerce." (Def.'s Mem. (Doc. 7) at 8.)

Plaintiff responds that "Plaintiff's allegation that HRRG falsely represented itself as 'ARS Account Resolution Services' is sufficient to state a claim under 15 U.S.C. § 1692e(14)" because "Debt collectors are required to use their 'true name' when communicating with consumers." (Pl.'s Resp. (Doc. 13) at 5-6.) Plaintiff further argues that "[t]he fact that ARS Account [Resolution] Services is registered as a trade name in Florida does not help Defendant." (Id. at 9.)

Analysis of Plaintiff's claim begins with the meaning of "true name" under 15 U.S.C. § 1692e(14). "Although the FDCPA does not say 'what a "true name" is, its import is straightforward:  A debt collector may not lie about his institutional affiliation.'" Sheriff v. Gillie, 578 U.S. ____, ____, 136 S. Ct. 1594, 1602 (2016) (quoting Gillie v. Law Offices of Eric A. Jones, LLC, 785 F.3d 1091, 1115 (6th Cir. 2015)). Furthermore, as a New Jersey District court describes:

> The Federal Trade Commission has interpreted the provision to mean that a debt collector "may use its full business name, the name under which it usually transacts business, or a commonly-used acronym. When the collector uses multiple names in its various affairs, it does not violate [§ 1692e(14)] if it consistently uses the same name when dealing with a particular customer." Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097-02, 50,107 (Dec. 13, 1988).  Alternatively, at least one court has held that a business's true name includes the name in which it has a license to conduct business under state law. See Kizer v. Am. Credit & Collection,

> No. B-90-78, 1990 WL 317475, at *6 (D. Conn. Dec. 17,
> 1990). Despite the ambiguity at the periphery of
> analysis of what is a true name, § 1692e(14) at its
> core clearly prohibits the use of a name that is
> neither the collector's actual corporate name nor its
> trade name, licensed or otherwise. See Peter v. GC
> Servs. L.P., 310 F.3d 344, 352 (5th Cir. 2002)
> (holding debt collector's use of "United States
> Department of Education" on outside envelope violated
> § 1692e(14)).

Boyko v. Am. Int'l Grp., Inc., Civil Action No. 08-2214

(RBK/JS), 2009 WL 5194431, at *6-7 (D. N.J. Dec. 23, 2009). The

Boyko court also recognized that "[g]iven however that the

purpose of the provision is to prevent fraud and misleading

representations, and given that Congress used an exacting term

like 'true name,' the Court is convinced that § 1692e(14)

requires debt collectors to use a precise, official name when

conducting debt collection activities." Id. at *7.

The Complaint does not plausibly allege that HRRG did not

use its "true name," and in fact is somewhat confusing about the

name of the Defendant. Plaintiff identifies Defendant as

"Healthcare Revenue Recovery Group, LLC, d/b/a ARS Account

Resolution Services" in the caption of the Complaint and in the

first paragraph. (Compl. (Doc. 1) at 1 and ¶ 1.) In identifying

the parties in the body of the Complaint, Plaintiff states that

"Defendant is an entity which at all relevant times was engaged,

by use of the mails and telephone, in the business of attempting

to collect a 'debt' from Plaintiff."[1] (Id. ¶ 26.) Because both North Carolina and Florida law permit businesses to use an assumed or fictitious name, see Fla. Stat. § 865.09(3); N.C. Gen. Stat. § 55D-22(a)(6), the allegations contained in the Complaint do not plausibly establish that HRRG somehow misrepresented or lied about its affiliation with ARS by sending a letter under an assumed business name.

Consistent with that conclusion, it is undisputed that Defendant has registered its fictitious name, ARS, in the State of Florida as evidenced by the public filing attached to Defendant's brief. (Doc. 7-1.) Plaintiff does not dispute this fact. In light of the undisputed facts, this court finds no plausible basis for Plaintiff's allegation that "'ARS Account Resolution Services' is not HRRG's 'true name.'" (See Pl.'s Resp. (Doc. 13) at 5-6.)

Defendant places heavy emphasis on Mahan v. Retrieval-Masters Credit Bureau, Inc., 777 F. Supp. 2d 1293, 1299 (S.D. Ala. 2011). In Mahan, "[p]laintiff concede[d] that [the defendant] communicated with her using its duly licensed trade

_____

[1] Describing Defendant as an entity engaged in debt collection at least suggests to this court that Plaintiff agrees HRRG does business under the trade name ARS. It does not explicitly or implicitly suggest any wrongdoing by HRRG in doing business under the name ARS.

name. . . . After all, [the defendant] had been conducting business under that name for more than two decades." Mahan, 777 F. Supp. 2d at 1301. Although Mahan is distinguishable based upon additional facts ("the defendant had been conducting business for more than two decades") not present in this case, the fact is that like Mahan, ARS is a licensed trade name for HRRG.

This court finds that Plaintiff has failed to allege any facts which support a conclusion that ARS is not HRRG's true name.

## 2. Whether the use of "ARS" is false, deceptive, or misleading

Even if ARS is a registered fictitious name for HRRG, Plaintiff cites language from Anthes v. Transworld Sys., Inc., 765 F. Supp. 162 (D. Del. 1991) stating that "a debt collector can use other names only to the extent that their use is not false, deceptive, or misleading," and argues that "HRRG's use of a pseudonym is precisely the misleading conduct § 1692e(14) was designed to prevent." (Pl.'s Resp. (Doc. 13) at 7) (citing Anthes, 765 F. Supp. at 172).) Plaintiff argues that:

> To discover ARS Account [Resolution] Services'
> connection to HRRG, the consumer would have to comb
> through the records of all fifty states and stumble
> upon its Florida fictitious name registration. As a
> result, the least sophisticated consumer would not
> know to search the web for consumer complaints

relating to HRRG, for licensing or registration
records relating to HRRG, or to otherwise investigate
HRRG.

(Id. at 7-8.)

Defendant replies that "[t]he connection between ARS and

HRRG – to the extent it is even a concern for the least

sophisticated consumer – is readily apparent from a simple

Internet search for 'Account Resolution Services,' which leads

to the ARS website that prominently identifies ARS as a division

of HRRG."[2] (Def.'s Reply (Doc. 15) at 9-10.)

After review, this court is not convinced Anthes can be

read so broadly as to support Plaintiff's claim. While Anthes

does find, and this court agrees, that "a debt collector can use

other names only to the extent that their use is not false,

deceptive, or misleading," Anthes, 765 F. Supp. at 172, Anthes

is readily distinguishable. First, the alleged violation of

1692e(14) in Anthes was more complex than the failure to use a

"true name." The Anthes plaintiff alleged that:

TSI [Transworld Systems, Inc.] violated § 1692e(14)
when it wrote to Anthes and told her that her account
might be 'TRANSFERRED TO THE CREDIT MANAGEMENT
SERVICES OFFICE NEAREST [HER] FOR PERSONAL ATTENTION

─────────────────────
[2] This court finds Defendant's argument as to what an
internet search might reveal neither relevant or compelling.
First, that argument requires this court to accept a factual
premise that goes well beyond the scope of this record. Second,
whether an internet search is an appropriate assumption for the
"least sophisticated consumer" is not clear.

> BY THEIR STAFF.' The [plaintiff's] argument is that
> TSI has created a false impression that a new
> collector is involved in the collection of her
> debt . . . .

Anthes, 765 F. Supp. at 172. The Anthes plaintiff contended that

TSI's reference to Credit Management Services (CMS) as a

separate collection office was false as TSI and CMS were a

single entity.[3] Plaintiff has not alleged that HRRG and ARS used

the separate names interchangeably, for some deceptive or

misleading purpose, or that Plaintiff was in fact misled.

Also unlike Anthes, the present facts as alleged do not

appear to plausibly establish that the name ARS is false or

deceptive as it is, in fact, a lawful assumed name registered

with the State of Florida to HRRG. There is no allegation that

HRRG's use of the fictitious name "ARS" occurred to mislead the

creditor by hiding the fact the letter was coming from someone

other than the original creditor, Maguire v. Citicorp Retail

Servs., Inc., 147 F.3d 232 (2d Cir. 1998); Catencamp v. Cendant

Timeshare Resort Grp.-Consumer Fin., Inc., 471 F.3d 780 (7th

Cir. 2006), or to create the false impression that a third party

---

[3] In Anthes, the court found that the defendant creditor and the debt collection agency were separate legal entities when dismissing the plaintiff's 15 U.S.C. § 1692e(14) claim. Anthes, 765 F. Supp. at 172. That does not appear to be the case here as it appears that HRRG and ARS are the same entity and nothing about the April 23 letter suggests otherwise.

had been engaged to collect a debt (<u>Nielsen v. Dickerson</u>, 307 F.3d 623 (7th Cir. 2002)).

This court therefore finds that Plaintiff has failed to plausibly allege facts to support a conclusion that ARS was not a "true name" for HRRG and, further, the Complaint does not plausibly allege that HRRG's use of the d/b/a of ARS was false, deceptive, or misleading.

### 3. <u>Whether ARS and HRRG's failure to register is unfair, misleading, or deceptive</u>

Plaintiff's argument that ARS is not a "true name" is based not only on the use of the name but also on the fact that ARS is not registered in any capacity in the State of North Carolina. (Pl.'s Resp. (Doc. 13) at 5-7.) This court has not found a general requirement of corporate registration with the Secretary of State that might apply based upon the allegations contained

in the Complaint, nor has Plaintiff identified any such statute.[4]
Nevertheless, even if Defendant failed to register as a foreign
corporation with the North Carolina Secretary of State as

---

[4] Plaintiff alleges that "ARS . . . is not registered as a
fictitious name for Defendant in the state of North Carolina,"
but does not allege any facts to explain why ARS was required to
register a fictitious name in the state, nor does Plaintiff
identify a statutory violation other than as discussed in the
opinion. This court is not persuaded the Complaint plausibly
alleges facts to suggest ARS is required to register as a
foreign corporation with the Secretary of State. Registration
does not apply to a foreign corporation "[t]ransacting business
in interstate commerce." See N.C. Gen. Stat. § 55-15-01(b)(8);
see, e.g., Divine v. Watauga Hosp., 137 F. Supp. 628, 631
(M.D.N.C. 1956) ("The plaintiff is a collection agency and as
such can not transact business within the state of North
Carolina without making application . . . . The plaintiff
contends that it is engaged in interstate commerce, using the
mails only to collect accounts. If it did nothing more than use
the mails the contention would be valid.").

Plaintiff's allegations appear to plausibly support a
finding that Defendant is not required to register by
application of N.C. Gen. Stat. § 55-15-01(b)(8). Plaintiff
specifically alleges that Defendant uses "instrumentalities of
interstate commerce or the mails in a business . . . ." (Compl.
(Doc. 1) ¶ 32.) Furthermore, Plaintiff's allegations are based
upon the letter dated April 23, 2015, (see id. ¶¶ 33-40), and
the allegations in the Complaint plausibly establish activity by
ARS only with respect to the use of the mails to send one letter
in connection with a collection activity. According to
Plaintiff's allegations and exhibit, the letter was sent by a
business with an address in Cincinnati, Ohio (see id., Ex. A),
to an individual in Burlington, North Carolina. (See id.) The
action of sending the April 23 letter, as described by
Plaintiff, appears on its face to be activity "in interstate
commerce" and therefore does not plausibly appear to subject
HRRG to registration requirements generally as a foreign
corporation with the North Carolina Secretary of State.

required, for the same reasons further explained in this opinion, this court does not find this fact sufficient to state a claim under the FDCPA.

Regardless of any general business registration requirement, Plaintiff alleges that "ARS or Account Resolution Services, is also not licensed as a collection agency in the State of North Carolina."[5] (Compl. (Doc. 1) ¶ 37.) Plaintiff contends that "[u]sing a name that is not registered with the state where Defendant is attempting to collect is false, deceptive, or misleading as Plaintiff would be unable to confirm the identity of the supposed collection agency." (Id. ¶ 38.) This court has not found a Fourth Circuit case addressing this issue, however, the Eleventh Circuit, in LeBlanc v. Unifund CCR Partners, 601 F.3d 1185 (11th Cir. 2010), addressed a similar issue. In LeBlanc, the plaintiff contended that the defendant, a

---

[5] Plaintiff alleges, in the Complaint, that the debt Defendant sought to collect is a consumer debt and Defendant is a debt collector as defined by 15 U.S.C. § 1692a(6) and a collection agency and debt collector within the meaning of applicable state law and, further, that Defendant failed to register as required by law. These facts are undisputed for purposes of the present motion and will be taken as true by this court. These facts are plausibly supported by facts. The collection letter, attached as an exhibit to the Complaint, contains a notice at the bottom which states the letter "is an attempt to collect a debt and any information obtained will be used . . . ." (Compl. (Doc. 1) Ex. A.)

debt collector, failed to "register as a consumer collection agency as required by state law." Id. at 1190. The LeBlanc court held:

> [A] violation of the FCCPA [Florida Consumer Collection Practices Act] for failure to register may, in fact, support a federal cause of action under Section 1692e(5) of the FDCPA . . . .
>
> . . . [The court does] not hold that all debt collector actions in violation of state law constitute per se violations of the FDCPA. Rather, the conduct or communication at issue must also violate the relevant provision of the FDCPA.

LeBlanc, 601 F.3d at 1192. The LeBlanc court concluded that the defendant's dunning letter could be found under the "least-sophisticated consumer" standard as creating a false impression which included a threat of a lawsuit by the debt collector. (Id. at 1196). A false impression existed in the LeBlanc case because the defendant was required to register before filing a lawsuit (id. at 1198), the defendant was not registered (id. at 1190), and the letter could be determined to be a "threat to take an action that cannot legally be taken." (See id. at 1200 n.31.) None of those facts are present here, as the April 23, 2015 letter threatens no action, it merely verifies a debt and requests payment.

Based on the facts alleged in the Complaint, taken as true, Plaintiff has not alleged any facts which plausibly suggest that

the sending of one letter, verifying a debt and requesting payment (see Compl. (Doc. 1), Ex. A), by an entity that has not registered as a collection agency in the State of North Carolina pursuant to N.C. Gen. Stat. § 58-70-110 constitutes a false, deceptive, or misleading act within the meaning of 15 U.S.C. § 1692e. The "body of the notice was informational . . . . There was no threat to sue. The least sophisticated debtor would construe the notice as a prudential reminder, not as a threat to take action. . . . There was no false representation that [ARS] had the power to collect in [North Carolina]." Wade v. Reg'l Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996).

### C. Plaintiff's claim under 1692f of the Fair Debt Collection Practices Act

Plaintiff's second claim under the FDCPA is asserted pursuant to 15 U.S.C. § 1692f, which provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation . . . :" Plaintiff does not argue a specific violation of one of the enumerated sections of 1692f, but argues under the general application that Defendant is in violation "by engaging in unfair or unconscionable means to collect or attempt to collect any debt from Plaintiff . . . without complying with

North Carolina's requirement to use the name of a registered collection agency within North Carolina and identifying their permit number." (Compl. (Doc. 1) ¶ 71.)

"[C]ourts have considered an action unfair where it is 'marked by injustice, partiality, or deception,' and unconscionable when it is 'unscrupulous,' 'show[s] no regard for conscience,' or 'affront[s] the sense of justice, decency, or reasonableness.'" Penn v Cumberland, 883 F. Supp. 2d 581, 593 (E.D. Va. 2012) (quoting LeBlanc, 601 F.3d at 1200).

Plaintiff argues that "[s]everal district courts have had the opportunity to consider whether a violation of state licensing laws also violates § 1692f, and they uniformly agree that it does." (Pl.'s Resp. (Doc. 13) at 12.) The cases upon which Plaintiff relies include Russey v. Rankin, 911 F. Supp. 1449 (D.N.M. 1995); Gaetano v. Payco of Wisconsin, Inc., 774 F. Supp. 1404 (D. Conn. 1990); Kuhn v. Account Control Tech., Inc., 865 F. Supp. 1443 (D. Nev. 1994).

However, the Ninth Circuit distinguished the cases relied upon by Plaintiff and issued a contrary analysis in Wade v. Regional Credit Association, 87 F.3d 1098 (9th Cir. 1996), which this court finds persuasive. In Wade, the defendant made a call from California and sent a notice to Idaho without a state permit. Idaho law, like North Carolina law as alleged, prohibits

persons from engaging in collecting accounts or bills without a permit. See id. at 1100. The court in Wade held that debt collection practices in violation of state law are not per se violations of the FDCPA. See id. The Wade court persuasively distinguished the cases relied upon by this Plaintiff (see id. at 1101 n.3) and held, in spite of any failure to register by the defendant, that the notice sent by the defendant was not false, deceptive, or misleading, nor was the notice unconscionable. See id. In light of the analysis in Wade, this court does not find Plaintiff's argument that violation of a state registration or licensing requirement, without more, constitutes a violation of the FDCPA.

In Currier v. First Resolution Investment Corp., 762 F.3d 529 (6th Cir. 2014), the Sixth Circuit has stated:

> Our sister circuits have indeed concluded — usually in the context of licensing violations — that not every technical violation of state debt collection law rises to the level of unfair or otherwise prohibited conduct under the FDCPA. . . .
>
> We agree that Congress did not turn every violation of state law into a violation of the FDCPA. But that does not mean that a violation of state law can never also be a violation of the FDCPA. The proper question in the context of an FDCPA claim is whether the plaintiff alleged an action that falls within the broad range of conduct prohibited by the Act. The legality of the action taken under state law may be relevant, as it is in this case.

Currier, 762 F.3d at 536-37 (collecting cases) (analyzing a state law violation as a potential violation of 15 U.S.C. § 1692f in the context of home liens). Similarly, a district court in the Eastern District of North Carolina recognized that "[d]ebt collection practices in violation of state law, however, do not 'per se' violate the FDCPA. Price v. M.R.S. Assocs., Inc., No. 7:13-CV-13-D, 2014 WL 2930723, at *4 (E.D.N.C. June 27, 2014). A district court in this circuit also recognized that "a violation of state law or ethical rules may form the basis of a § 1692f claim where such violations amount to an unfair or unconscionable means to collect a debt . . . ." See Penn, 883 F. Supp. 2d at 594.

"Accordingly, a collection agency that collects or attempts to collect any debt without a required state permit does not necessarily use 'unfair or unconscionable means' in violation of 15 U.S.C. § 1692f. . . . Put differently, without evidence that an unlicensed entity's letters, telephone calls, or other collection efforts were in any way unfair or unconscionable, the court is left with an allegation of a per se violation — which is insufficient to survive a motion for summary judgment." Price, 2014 WL 2930723, at *4.

Plaintiff has not plausibly established, as a matter of fact or law, how Defendant's failure to comply with North

Carolina's permit requirement, or its failure to display a permit number on a letter, is unfair or unconscionable when the information contained in the collection letter is not otherwise demonstrably false, deceptive, misleading, unfair or unconscionable.

North Carolina's statutory scheme suggests the legislature did not intend to create a private right of action against a debt collector who fails to register as required by N.C. Gen. Stat. § 58-70-1 and N.C. Gen. Stat. § 58-70-50. N.C. Gen. Stat. § 58-70-1 specifically creates a criminal penalty for violations of the statutes but does not create a private remedy. Nor does N.C. Gen. Stat. § 58-70-50 create a private right of action.

N.C. Gen. Stat. § 58-70-130 creates a private right of action for violations of Article 70, but only for violations of Part 3 of Article 70 of N.C. Gen. Stat. Chapter 58. Because both §§ 58-70-1 and 58-70-50 are set out in Part 1, by implication a private cause of action is not created for a failure to register.

Although it is not disputed at this stage that Defendant was not registered as a debt collector under N.C. Gen. Stat. § 58-70-1 and N.C. Gen. Stat. § 58-70-50, that fact alone is insufficient to establish a violation of the FDCPA unless the pleadings establish that the act falls "within the broad range

of conduct prohibited by the [FDCPA]." <u>Currier</u>, 762 F.3d at 536.
This court finds, to the extent Plaintiff has pled violations of
North Carolina state law, that Plaintiff has not plausibly
alleged a violation of 15 U.S.C. § 1692f.

### D. <u>The overlap in facts between the 15 U.S.C. §§ 1692e and 1692f claims</u>

Defendant argues that "the Plaintiff's allegations under
§ 1692f are not separate and distinct from his allegations in
regard to § 1692e, and numerous federal courts have emphasized
that plaintiffs may not rely on violations of other FDCPA
provisions to state a claim under § 1692f." (Def.'s Mem. (Doc.
7) at 14.) Plaintiff responds that "[e]ven to the extent the
conduct underlying Plaintiff's § 1692f claim overlaps with his
§ 1692e(14) claim, such overlap is not a basis for dismissal."
(Pl.'s Resp. (Doc. 13) at 13.) Plaintiff argues that "HRRG
erroneously suggests that Plaintiff is procedurally prohibited
from even presenting a claim under 1692f if the same conduct is
alleged to violate other sections of the FDCPA." (<u>Id.</u>)

The Fourth Circuit has outlined that "the courts use
§ 1692f to punish conduct that FDCPA does not specifically
cover" when dismissing a claim brought under § 1692f. <u>Lembach v.
Bierman</u>, 528 F. App'x 297, 304 (4th Cir. 2013). In that case,
"[b]ecause the [plaintiffs] rel[ied] on conduct that is covered

by § 1692e and [did] not allege any separate or distinct conduct to support a § 1692f violation, their claim fail[ed] for this reason as well." Id. "Thus, courts routinely dismiss § 1692f claims where the plaintiff does not allege any conduct in a § 1692f claim separate from the conduct that forms the basis of the § 1692e claims." Biber, 2017 WL 118037, at *11 (internal punctuation and quotation marks omitted).

It appears to this court that the single operative fact, ARS' failure to register, is the basis for the claims under both statutes. However, in view of this court's determination that Plaintiff's claims are subject to dismissal on substantive grounds, this court does not find it necessary to resolve whether the second claim arising from 15 U.S.C. § 1692f alleges separate conduct.

### E. This court declines to exercise jurisdiction over Plaintiff's Third and Fourth Claims

Having found that Plaintiff has not sufficiently pled facts to support his first or second claim, which are the federal claims conferring jurisdiction upon this court, only state law claims remain. Because these state law claims are based on a significant state law issue not yet answered by the North Carolina Supreme Court, that is, whether a failure to register by a debt collector can support a private cause of action

alleging violations of N.C. Gen. Stat. § 58-70-110 and N.C. Gen. Stat. § 75-54, this court declines to exercise supplemental jurisdiction over these claims and dismisses them without prejudice.

## IV.  <u>PLAINTIFF'S MOTION TO STRIKE OR FILE SURREPLY</u>

Plaintiff moves to strike one sentence from Defendant's reply brief: "[t]he connection between ARS and HRRG – to the extent it is even a concern for the least sophisticated consumer – is readily apparent from a simple Internet search for 'Account Resolution Services,' which leads to the ARS website that prominently identifies ARS as a division of HRRG." (Pl.'s Mot. to Strike (Doc. 16) at 2 (<u>citing</u> Def.'s Reply (Doc. 15) at 9-10).)

Plaintiff argues that this court cannot "judicially notice this outside evidence under Federal Rule of Evidence 201" because "the content of Defendant's website during the class period . . . is neither generally known within this, or any, court's jurisdiction, nor is it accurately and readily determined from unquestionable sources." (<u>Id.</u>) Plaintiff also argues that "decisions by the Fourth Circuit as well as this Court have consistently held that arguments raised for the first time in a reply brief are waived." (<u>Id.</u> at 4.)

Defendant responds that "[t]he Plaintiff's Motion to Strike should be denied, because the Defendant's reference and argument regarding judicial notice are responsive to the Plaintiff's opposition to the Motion to Dismiss, and they are proper for the Court's consideration of a Motion to Dismiss." (Def.'s Resp. to Pl.'s Mot. to Strike (Doc. 17) at 2.)

Federal Rule of Evidence 201(b) provides "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."

With regards to the first prong of Fed. R. Evid. 201(b), this court finds that the contents of Defendant's website on April 23, 2015 are not "generally known within the trial court's territorial jurisdiction." Id. With regards to the second prong, as Plaintiff points out, "[w]ebsites are frequently modified, and therefore the current content of [Defendant's website] may not be representative of its content at any other time." (Doc. 16 at 3.) Despite the fact that other courts have taken judicial notice of the content of parties' websites, see Jeandron v. Bd. of Regents of Univ. Sys. of Md., 510 F. App'x 223, 227 (4th Cir. 2013), this court declines to do so because a "reasonable

question" exists as to the accuracy of the website's current content as it relates to the same content during April of 2015. Fed. R. Evid. 201(b).

Further, this court finds it unlikely that the "least sophisticated consumer" can be fairly expected to conduct internet searches in order to find the link between ARS and HRRG when he or she cannot be expected to make sense of acronyms. See <u>Catencamp</u>, 471 F.3d at 782.

Because this court declines to take judicial notice of the evidence Plaintiff's motion sought to strike, this court denies the Plaintiff's motion as moot.

## V.    <u>CONCLUSION</u>

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 6) is **GRANTED** and that Plaintiff's Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE** as to Claims 1 and 2 and **DISMISSED WITHOUT PREJUDICE** as to Claims 3 and 4.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike or in the Alternative for Leave to File Surreply to Defendant's Motion to Dismiss (Doc. 16) is **DENIED.**

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 24th day of April, 2017.

_____
United States District Judge